In the Matter of the Estate of GEORGE W. LOCKWOOD, Deceased.

Surrogate's Court, Delaware County, January 18, 1935.

*Arthur E. Conner* [*Paul F. Eaton* of counsel], for the administratrix Cecelia L. Fairchild.

*John G. More*, for Loker & Berryann, creditor.

*F. W. Youmans*, for Smith & St. John, creditor.

*George B. Hurley*, for the Fidelity and Casualty Company of New York, surety on bond of administratrix.

O'CONNOR, S. George W. Lockwood, a resident of the town of Walton, Delaware county, N. Y., died on the 17th day of August, 1931, leaving him surviving his widow, Cecelia Lockwood, who has since married and is now Cecelia L. Fairchild. For convenience she will hereinafter be referred to as Mrs. Lockwood. On the

death of the said George W. Lockwood, his widow was duly appointed administratrix of his estate and gave a bond for the faithful performance of her duties as such administratrix with the Fidelity and Casualty Company of New York as surety.

Upon the petition of certain creditors the said administratrix was directed to file her account for judicial settlement in which she accounts only for one-half of the real and personal property occupied and in possession of her deceased husband, George W. Lockwood, at the time of his death. She claims a one-half interest in and to said real and personal property by virtue of an antenuptial agreement dated February 3, 1921, executed and delivered to her on that day by said George W. Lockwood; on the same day she and the deceased were married. Prior to the marriage and the execution and delivery of the said antenuptial agreement said George W. Lockwood had contracted to purchase a certain farm situate in the town of Walton, Delaware county, N. Y., from one Albert H. Sewell. On the 1st day of November, 1922, said Sewell made, executed and delivered to George W. Lockwood a deed of the premises so contracted to be sold by said Sewell to said Lockwood and, in violation of the antenuptial agreement, the title to the premises was taken in the name of George W. Lockwood. After the death of the deceased the barn on said premises and some personal property therein burned. The barn and personal property were insured in the Walton Co-operative Fire Insurance Company. Due proof of loss was filed and the insurance company paid to the administratrix $1,270.50, $1,000 for the loss of the barn and $270.50 for the personal property therein destroyed by fire. For a period of ten years prior to his death the deceased had conducted the farm and transacted all business matters in relation thereto in his own name. The debts, for which creditors have filed claims against the estate, were contracted by deceased in connection with said farming business. The milk produced by the dairy on said farm was marketed, and the milk checks therefor came in the name of the deceased.

The creditors of the deceased object to the claim of the widow that she is entitled to one-half of the real estate and personal property pursuant to the antenuptial agreement and contend that the creditors are entitled to a payment of their claims so far as the same may be had out of the insurance moneys paid by the insurance company to the administratrix on account of the destruction of the barn and personal property by fire.

The above facts were established partly by testimony and partly by agreed statement of facts submitted to the court by the attorneys for the respective parties.

The question is raised by the creditors as to whether or not this court has jurisdiction to try and determine the ownership of the real and personal property and the validity, force and effect of the antenuptial agreement in this proceeding. The jurisdiction of Surrogate's Court was for a long time limited, but section 40 of the Surrogate's Court Act has greatly enlarged the jurisdiction of that court and gives it jurisdiction " To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." This section is sufficiently broad to give this court jurisdiction to determine any and all of the questions at issue here.

As between the deceased, George W. Lockwood, and his widow, Cecelia Lockwood, she is entitled to one-half of the real and personal property by virtue of the antenuptial agreement entered into between the deceased and his widow prior to their marriage and the same is impressed with a trust in favor of Mrs. Lockwood to the extent of the one-half interest agreed to be conveyed to her, even though the deceased took title to the real property in his own name. (*Lamb* v. *Lamb*, 18 App. Div. 250; *Foreman* v. *Foreman*, 251 N. Y. 237; *Melonson* v. *Dolan*, 214 App. Div. 821; affd., 241 N. Y. 613.)

If the rights of the creditors did not intervene, there would be no question as to the widow being entitled to one-half of the real and personal property by virtue of the antenuptial agreement to the exclusion of the heirs and next of kin of deceased. However, the rights of the creditors do intervene and they are entitled to the moneys realized from the real and personal property of the deceased and any insurance moneys paid on account of the destruction thereof. This is so because the antenuptial agreement was not recorded and Mrs. Lockwood permitted her husband to operate the farm, transact all business in connection therewith, market the milk and have the milk checks come in his name while she claimed to be the owner of one-half of the real and personal property by virtue of the antenuptial agreement. She permitted her husband to hold out to the whole world, and especially the creditors, that he was the sole owner of the real and personal property and in no way gave them notice that she owned or claimed to own a one-half interest therein.

While the Recording Act is solely for the protection of subsequent purchasers and lienors, a party cannot take advantage of his own failure to record an instrument showing an interest in real property for a long period of years, permit credit to be extended to the record owner of title upon the faith of said title and then claim that such creditors are not entitled to look to such real estate for satisfaction of their debts. According to the records, George W. Lockwood, the deceased, was the owner of the real property. The creditors were justified in believing that he was the sole owner thereof, as he conducted the entire operation of the farm in his own name. What notice did they have that Mrs. Lockwood had or claimed to have a one-half interest in this farm and the personal property thereon? An examination of the records on her part would have disclosed the true situation. Her failure to examine the records and ascertain the true situation would not prejudice her rights as between her husband and herself. On the other hand, she cannot defeat the claim of creditors who had a right to rely upon the record.

The money received from the insurance company on account of the destruction of the barn is real property. (*Wyman* v. *Wyman*, 26 N. Y. 253; *Matter of Mullin*, 121 Misc. 867.) This being so, it would ordinarily pass to the heirs at law of the deceased. The only way that the real estate could have been reached by the creditors, had it not been for the fire, would have been through proceedings to sell the real estate for the payment of debts. However, it is not necessary to institute such a proceeding in order to make these moneys applicable to the payment of decedent's debts. That portion of the real estate represented by the barn which was burned has already been converted into personal property by the payment of the insurance money. That being so, the court has a right to treat it as personal property and direct that the administratrix apply it to the payment of the debts of decedent. Where a sale of the real estate of decedent has been legally had, the representatives have the right to use it for all purposes of administration and to pay the debts of decedent before distributing it to those entitled to take by inheritance. (*Matter of Bolton*, 146 N. Y. 257.)

The insurance moneys which were paid by the insurance company to Mrs. Lockwood on account of the loss by fire of the barn and personal property must be accounted for by her as administratrix as part of the assets of the estate of the decedent. Some of the personal property set forth in Schedule C of the inventory filed by the administratrix was undoubtedly destroyed by fire. The administratrix should, therefore, account for the personal property

contained in Schedule C of her inventory, less the articles therein set forth which were destroyed by fire, plus the $270.50 insurance she received on account of the destruction of any such articles by fire, and in addition thereto the $1,000 received by her for insurance on the barn.

A decree may be prepared and submitted upon five days' notice.