Laweence, J.
Edward H. R. Green, the decedent, entered into an antenuptial agreement, dated June 26, 1917, with his intended wife, then Mabel E. Harlow, and the Columbia Trust Company, now Irving Trust Company, by which he assigned to the said trust company certain bonds of the State of New York, the City of New York, and the United States, of the aggregate amount of $460,000. By the terms of the agreement the trust company was to collect the income and pay out of it the sum of $1,500 monthly to Mabel E. Harlow during her lifetime and, upon her death, to transfer and deliver the principal of the trust fund to Edward H. R. Green, if living and if not living, to the children of their marriage in equal shares, and if there were no children, then to such person or corporation as the decedent, by his last will, should appoint, and in default of such appointment, to the personal representatives of the decedent. The trust agreement provided that if any balance of income should remain at the end of any calendar year, after paying out the sum of $1,500 monthly and after deducting the charges of the trustee, which were agreed upon at the annual sum of $400, such balance should be returned to the decedent or his executors, administrators or assigns. The agreement stated that it was estimated that the securities transferred would be sufficient to produce the income to be paid to Mabel E. Harlow as well as the charges of the trustee but that if any deficiency should arise, the decedent would transfer to the trustee additional securities yielding income sufficient to make up any deficiency- and provide for the payment of $1,500 to Mabel E. Harlow each month without charge or deduction of any kind. The agreement provided that, with the consent of Mabel E. Harlow, the decedent should have the *174 right at any time during the existence of the trust to substitute other securities for any held by the trustee. The agreement provided that if and when any securities matured, the trustee should collect the proceeds and reinvest such proceeds in tax exempt government, state or municipal securities. The trustee was empowered, with the consent in writing of the other parties to the agreement, or the survivor, to dispose of the property held in trust and reinvest the proceeds.
The trust is still in existence. The securities now held are bonds of the United States, the State of New York and the City of New York, bearing interest at from 2%% to 4%%, with a small amount of cash, all of the present value of $625,218.96. These bonds have secured an income in the past of a small amount in excess of the amount necessary to pay and discharge the obligations under the antenuptial agreement.
Mabel B. Harlow and the decedent were married about July 10, 1917. There were no children of the marriage. Mabel E. Harlow Green is still living and is the widow of the decedent. She is now. about seventy-five years of age.
Decedent’s will is dated March 8, 1908. By it he gives to his mother, Hetty H. B. Green, all his estate if she should be living at the time of his death. In ease she is not living at the time of his death, the property, by the will, is given to a sister, Hetty Sylvia A. H. Green, now Mrs. Willis. The mother died July 3, 1916. Edward H. B. Green died June 8, 1936. The sister still survives. The will of the decedent was admitted to probate in Essex County, New York, November 4, 1937. It contained no provision exercising any power of appointment mentioned in the trust agreement regarding distribution of the property of the trust fund. Proceedings for judicial settlement were commenced by petition verified July 18, 1944. The widow, beneficiary of the trust agreement, was not cited on judicial settlement. The* Irving Trust Company appeared and filed objections to the account. It demanded that sufficient high quality tax exempt securities, in the aggregate face amount of not less than $1,700,000, with sufficiently remote maturity date, adequately to protect the trust against any deficiency of the required income during the continuance of the trust be transferred from the estate to the trust company, or be reserved in .the estate for such transfer in the future, unless, as an alternative, there be transferred and delivered to the trust company, as trustee, in exchange and substitution for securities now held in trust, other securities of a kind, amount, interest rate, and maturity date satisfactory *175 to it, or that there should be delivered to the trustee an instrument executed by the sole beneficiary in form satisfactory to it, assuming the obligation of the decedent under the trust agreement to transfer additional securities to it as trustee.
The final decree on judicial settlement overruled the objections of the Irving Trust Company and distributed the total remaining assets to the sister as sole beneficiary under the will, and taxed costs and disbursements in the sum of $308 against the Irving Trust Company. The contingent claim of the trust company had been presented pursuant to section 207 of'the Surrogate’s Court Act which provides, among other things, that there shall be no distribution of assets without the reservation of such assets as the Surrogate shall determine to be adequate to pay the contingent or unliquidated claim when the amount shall become due and payable. In fixing the amount to be reserved the Surrogate is given power to determine the value of any securities to which the creditor may resort for the payment of the debt and may direct the reservation of estate assets sufficient to make up the difference between the value of the securities and the amount necessary to pay the contingent claim. The section further provides that the final decree shall direct that the assets which are found sufficient to satisfy the claim be retained for such period as the court may deem proper.
At the time of the trial in January, 1945, there were in the hands of the trustee bonds as follows:
IT. S. Treasury bonds, due Dec. 15, 1953, ' of the face value of...................... $1,550
New York City bonds, due Nov. 1, 1954, of the face value of.......................... $225,000
New York State bonds, due Sept. 1, 1963, of the face value of...................... $225,000
New York State bonds, due Jan. 1, 1964, of the face value of...................... $10,000
According to mortality tables the life expectancy of the beneficiary of the trust at the time of the trial was less than eight years. Mortality tables do not furnish an absolute measure for the duration of life. The argument by the respondents that the beneficiary could not be expected to survive the maturity dates of the bonds now held is of little force. The respondents contend that the agreement establishing the trust is an annuity and that the principal of the fund may be resorted to in order to make up any deficiency. *176 That would seem to be opposed to the intention of the decedent expressed by the agreement in which he states that in case of deficiency of income, he will transfer additional securities to- yield an income sufficient to discharge the obligations provided for in the trust agreement. It seems clear that the decedent had in mind that there.should be no invasion of the principal of the trust. That obligation he assumed and provided for. The same obligation is incumbent upon his estate. To vary the requirements would, to that extent, annul the trust and permit use of the trust property contrary to the purpose expressed in the agreement and intended by the decedent. A trust cannot be destroyed or impaired for any purpose other than the purpose of the trust. (Matter of Sullard, 247 App. Div. 761.) The bonds now held in trust will mature. The beneficiary of the trust may be living at that time. If the trustee cannot purchase from the proceeds tax exempt bonds issued by the Government or the State or a municipality sufficient to yield the required income, it will have the right, under the agreement, to insist that the estate of the decedent transfer to it additional securities sufficient to yield the income necessary to discharge its obligations under the trust agreement. This right can be protected pursuant to. section 207 of the Surrogate’s Court Act. (Matter of Burridge, 146 Misc. 527; Matter of Reid, 165 Misc. 207.) The trust company has not been protected by any provision in the final decree.
The Surrogate’s Court has no jurisdiction over an inter vivos trust. (Matter of Lyon, 266. N. Y. 219; People ex rel. Safford v. Surrogate’s Court, 229 N. Y. 495; Matter of Crosby, 136 Misc. 688.) Respondents do not challenge that rule as a primary rule hut insist that whenever, as an incident to the exercise of its jurisdiction, it becomes necessary to determine what constitutes the assets of an estate, the Surrogate’s Court has jurisdiction, and cites as authority Matter of Lockwood (154 Misc. 233). The-contention that jurisdiction is vested in the Surrogate’s Court over inter vivos trusts seems opposed to the law as announced in Matter of Lyon (supra) and cases there cited. (See, also, Matter of Ihmsen, 161 Misc. 789.)
Respondents cite several cases which are said to establish the right to invade the principal of a trust in order to make funds available for the payment of specified amounts to beneficiaries. (In re Ebbets’ Will, 46 N. Y. S. 2d 828; Matter of Gabler, 140 Misc. 581; Matter of Myers, 178 Misc. 91; Matter of Ingraham, 158 Misc. 602; Matter of John Frank Hazelton. *177 119 Misc. 389; Matter of Whitcomb, 175 Misc. 564; Matter of Anderson, 143 Misc. 250.) In some of these cases there seems to be no restriction against invading the principal. In some of them a specific intention to do so is apparent. In these cases the invasion of the principal was the only means by which annual payments to the beneficiaries could be accomplished.
The right to invade the principal of a trust fund would seem to depend upon the intention of the creator of the trust to be gathered from all the surrounding circumstances. In Pierrepont v. Edwards (25 N. Y. 128) it is said that no positive rule of ready application in every case can be laid down but that each case will depend upon a consideration of all the material provisions of the will to be construed and all extrinsic circumstances respecting decedent’s family and estate which may fairly be brought to bear upon the question of intent. In that case an invasion of principal was allowed. The same doctrine was stated in Delaney v. VanAulen (84 N. Y. 16). In the last mentioned case no invasion of principal was permitted. These principles seem to have controlled subsequent decisions.
In the case at bar the intention of decedent seems clear. It is not necessary to resort to the principal of the trust in order to secure the annual payments to Mrs. Green. The decedent provided against any such contingency. He expressly provided that the trust fund should be increased, if necessary, in order to make possible payments from income. This obligation passed to his estate.
Another feature of the case should be mentioned. If the Surrogate’s Court has power to decree an invasion of the principal of an inter vivos trust, it would not be justified in so doing in the case at bar to the possible prejudice of the beneficiary who is not a party to the proceedings. She has the right to be paid from income in pursuance of the agreement and to have the principal remain intact. Anything less than that would result in a breach of- the trust agreement. That right must receive full recognition and all contingencies must be provided for in order to protect her and the trust company. It seems clear than no specific authority is given to the Surrogate’s Court to control an inter vivos trust. The jurisdiction of the Surrogate over such a trust does not seem to be of prime importance here or necessary to be determined. The decedent made an agreement. His obligation creates a contingent liability which can and should be protected under section 207 of the Surrogate’s Court Act. Nearly one half of the funds now held in the trust will mature by 1954. It may *178 be very difficult at that time to purchase with the proceeds of the matured bonds securities such as are required by the trust agreement without paying large premiums with possible amortization deductions to be made. It is stated in appellant’s brief, and doubtless appears in the account which is not printed, that decedent’s estate now has bonds answering the requirements of the trust agreement to the extent of $488,000, which mature from 1960 to 1967. A portion of these bonds with distant maturity dates could be substituted for the bonds now held in the trust which mature in 1953 and 1954. Such substitution would in no respect prejudice the estate and would reasonably assure compliance with the terms of the trust agreement. If the respondent, Mrs. Wilks, is unwilling to make such substitution and is unwilling to execute an agreement signed by her assuming the obligation of the decedent to transfer additional securities to the trust as asked for, then it becomes necessary to determine the amount of funds or securities which will be sufficient to produce income to discharge any obligation of decedent under the trust agreement. That amount has been shown to be about $2,000,000, in order to provide for possible contingencies according to the conditions which prevailed at the time of the trial.
The decree appealed from should be modified, and in part reversed on the law and the facts. The provisions overruling appellant’s objections to the account and disallowing the contingent claim as well as the provision allowing costs against the appellant should be eliminated. The decree settling the account and releasing the respondents from liability and permitting the payment of the balance of the principal and income to Mrs. Wilks as legatee should contain a provision for reserving in the hands of the respondents $2,000,000 as assets of the estate to satisfy appellant’s contingent claim unless respondents adopt one of the appellant’s methods of satisfaction described in its proof of claim. The decree should also contain an award of costs and disbursements in this court and in the court below in favor of the appellant. Matter remitted to the surrogate to enter a decree in accordance with the opinion.
Hill, P. J., Hefeernan, Brewster and Foster, JJ., concur,
Ordered accordingly. [See post, p. 760.]